UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

Francisco Amaya and                                         Case No.: 11-78239-ast
Celia M. Amaya                                              Chapter 7

                          Debtors.
----------------------------------------------------------X

## DECISION AND ORDER REGARDING MOTION TO REOPEN

Pending before the Court is the motion by former debtors, Francisco Amaya and Celia

Amaya ("Debtors") to reopen their chapter 7 case to schedule an undisclosed prepetition claim

for personal injuries.  Previously, in *In re Warmbrand*, 2013 Bankr. LEXIS 4786 (Bankr.

E.D.N.Y. Oct. 17, 2013), this Court articulated a test for determining whether a debtor's case

should be reopened to allow a debtor to schedule a previously undisclosed personal injury action.

This Court subsequently applied the *Warmbrand* test in *In re Lerner*, 515 B.R. 26 (Bankr.

E.D.N.Y. 2014) as well as in various unpublished rulings. *See, e.g., In re Boulassikis*, 02-88108

(AST) [dkt item 20] (Bankr. E.D.N.Y. Apr. 11, 2014).  Applying the *Warmbrand* test to the facts

of this case, the Court concludes that this case should be reopened.

### Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(2)(A), and the Standing Orders of Reference in effect in the Eastern District of New York

dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as

of June 23, 2011.

### Background

On June 12, 2011, Mr. Amaya allegedly sustained personal injuries as a result of a

physical altercation while he was a patron at a restaurant.

On November 21, 2011, Debtors jointly filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

On the petition date, Andrew M. Thaler was appointed as the chapter 7 trustee of Debtors' bankruptcy estate (the "Trustee").

Also on the petition date, the Court's Clerk's Office issued a Notice of Deficient Filing based upon Debtors' failure to file all of the statements and schedules required of chapter 7 debtors.  [dkt item 3]

Shortly thereafter, the Court's Clerk's Office generated and mailed notice of the commencement of Debtors' case to all creditors listed in their schedules.  In that notice, the case was labeled a "no asset case"; thus, creditors were directed not to file proofs of claim until given notice to do otherwise.  A date for the § 341 meeting was also provided.[1]

On December 22, 2011, Debtors filed all of their outstanding statements and schedules. [dkt item 9]

In their schedules, Debtors listed ten unsecured creditors and two secured creditors holding approximately $443,538.58 in claims.  Debtors were represented by counsel when preparing and filing their bankruptcy petition, but they did not disclose Mr. Amaya's potential personal injury claims in their schedules or later at their § 341 meeting.

On December 29, 2011, the Trustee issued his "Report of No Distribution".  The report

---

[1] "Rule 2002(e) allows the clerk to issue what has become known as the 'no asset' notice. In a chapter 7 case when there appear to be no distributable assets, the notice of the meeting of creditors may contain a statement to that effect. Creditors are requested not to file proofs of claim and are informed that, should assets later become available, notice of such assets and notice of the bar date for filing proofs of claim will be mailed." 8 COLLIER ON BANKRUPTCY P. 2002.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see* FED. R. BANKR. P. 2002(e).

indicated that after a diligent inquiry into Debtors' financial affairs, the Trustee was unable to discover any non-exempt estate property available for distribution to Debtors' creditors. Accordingly, the Clerk's Office was not required to give notice to creditors to file claims.

On February 28, 2012, Debtors received their discharge and their case was closed on April 6, 2012. Debtors neglected to disclose the existence of any personal injury claim(s) to the Court or to the Trustee at any point during their case.

On December 5, 2012, Mr. Amaya commenced an action before the Suffolk County Supreme Court styled *Francisco Amaya –against- Pueblo Viejo Restaurant, Inc., Cesar Diaz Molina, Domingos Cunna and John Doe*, under Index No. 12-36482, seeking damages on account of the injuries he allegedly sustained in June 2011 (the "Personal Injury Action").

On September 29, 2014, nearly two and half years after their case had been closed, Debtors filed a motion to reopen their bankruptcy case in order to add Mr. Amaya's personal injury claim to their schedules (the "Motion"). [dkt item 20] In their Motion, Debtors argue that their failure to disclose Mr. Amaya's claim was inadvertent; Mr. Amaya allegedly misinterpreted the Trustee's inquiry regarding the existence of any personal injury *claims*, as a question of whether Mr. Amaya had any pending personal injury *actions*. The Motion provides that when Debtors informed their personal injury counsel of their mistake, they informed their bankruptcy counsel, who then contacted the Trustee. Debtors further contend that allowing them to reopen their bankruptcy case will inure to the benefit of their creditors, because the Personal Injury Action could result in an award in excess of $50,000.

Cesar Diaz Molina and Pueblo Viejo Restaurant, defendants in the Personal Injury Action ("Defendants") filed an opposition to the Motion on October 16, 2014 (the "Opposition"). [dkt item 23] The Opposition states that Defendants were in the process of moving to dismiss the

Personal Injury Action[2], but Debtors filed their Motion before Defendants were able to do so. Defendants argue that the Motion is untimely under Rules 59 and 60 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 9023 and 9024, and is "disingenuous", because Debtors knew of the facts and circumstances surrounding their personal injury claim but failed to disclose it to this Court.

On October 17, 2014, the Trustee filed a statement regarding Debtors' Motion. [dkt item 26] The Trustee states, *inter alia*, that he does not wish to take a position on the merits of the Motion, but wishes to reserve the estate's rights in the Personal Injury Action should this case be reopened.

The Court held a hearing on Debtors' Motion on October 21, 2014, at which the parties argued the positions cited in their respective papers. At the conclusion of that hearing, the Court stated that before it could provide the parties with a ruling it would require an affidavit from Mr. Amaya regarding his failure to schedule his personal injury claim. The Court directed Mr. Amaya to file such an affidavit, and gave Defendants ten days to file a response, after which the Court would take the matter under submission.

On November 25, 2014, Mr. Amaya filed an affidavit in support of the Motion. [dkt item 27] In his affidavit, Mr. Amaya states that after he sustained injuries but before he filed for bankruptcy he consulted a personal injury attorney regarding the possibility of filing a lawsuit to recover damages on account of those injuries. Mr. Amaya states that the attorney advised him that he did not have a viable case based upon (1) the lack of available evidence, (2) Mr. Amaya's

---

[2] Defendants filed a motion to dismiss and/or for summary judgment in February 2014. That motion was denied without prejudice by the state court on July 25, 2014, due to procedural deficiencies. Sometime later, Defendants obtained leave to re-file their dismissal motion.

ability to continue to work, and (3) the police's decision not to pursue criminal charges against the alleged perpetrators.   Therefore, Mr. Amaya believed he did not have a claim that he needed to disclose in his bankruptcy case.  In August 2012, Mr. Amaya alleges that he consulted with the same personal injury attorney; at that time, because of Mr. Amaya's deteriorating health and inability to work, the attorney believed sufficient evidence existed to support a lawsuit.  Mr. Amaya further states that he had no intention of concealing his potential claims, but he does not address why he waited to file the Motion until his adversaries in the Personal Injury Action moved to dismiss that case.

On December 1, 2014, Defendants filed a supplemental affirmation in opposition.  [dkt item 29]  Defendant's supplemental affirmation notes that Mr. Amaya has failed to point to any evidence discovered after he sustained his injuries that was not present at the time he filed this case, when he appeared for his § 341 meeting, when he received his discharge, or after the case was closed.  Defendants point to Mr. Amaya's allegations in the Personal Injury Action regarding the extent and severity of his injuries – information regarding these injuries, which included fractures, lacerations, and trauma to the face, head, and neck, were available to Mr. Amaya and his personal injury attorney before he filed for bankruptcy and was not any different when the Personal Injury Action was ultimately commenced.  Defendants also highlight that the Motion was only filed after facing dismissal of the Personal Injury Action.

## Discussion

*1. The Standard for Reopening a Closed Bankruptcy Case*

Bankruptcy Rule 5010 authorizes debtors or other parties in interest to move to reopen a

closed bankruptcy case within a reasonable time.  *See* FED. R. BANKR. P. 5010, 9024[3].  Section 350(b) of the Bankruptcy Code authorizes courts to reopen a case "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  This Court has previously stated that "[t]he statute's permissive language provides the Court with broad discretion to determine whether a debtor filed a motion to reopen in good faith or has demonstrated good cause."  *In re Farley*, 451 B.R. 235, 237 (Bankr. E.D.N.Y. 2011).

The decision to reopen a case "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case."  *In re I. Appel Corp.*, 104 Fed. App'x. 199, 200 (2d Cir. 2004); *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996).  This Court will limit the exercise of its discretion to reopen a closed case "in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources."  *Farley*, 451 B.R. at 237.

The moving party carries the burden of proof in establishing cause to reopen.  *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) *aff'd* 2012 U.S. Dist. LEXIS 113133 (E.D.N.Y. Aug. 12, 2012).  While the Bankruptcy Code does not define what constitutes "cause" under § 350(b), courts have found that "cause to reopen a bankruptcy case includes the need to amend schedules to add assets or creditors".  *In re Stein,* 394 B.R. 13, 15 (Bankr. E.D.N.Y. 2008).  A debtor's failure to disclose an asset may be viewed as inadvertent and thus done in

---

[3] Defendants have argued that the Motion is untimely pursuant to Rules 59 and 60; however, Rule 59 is not applicable here because the Motion is not a motion for a new trial or to alter or amend a judgment and Bankruptcy Rule 9024, which incorporates Rule 60, explicitly provides that the one year limitation prescribed in Rule 60(c) is not applicable to a motion to reopen a bankruptcy case.  FED. R. BANKR. P. 9024.  This Court and courts in this district have found that motions to reopen filed nearly three years, *Warmbrand*, 2013 Bankr. LEXIS 4786, eight years, *In re Stein*, 394 B.R. 13 (Bankr. E.D.N.Y. 2008), and fifteen years, *In re Narcisse*, 2013 Bankr. LEXIS 1336 (Bankr. E.D.N.Y. Mar. 29, 2013), after a case was closed to be timely.  Based on the circumstances presented here, this Court finds that Debtors' Motion was made within a reasonable time.

good faith where the debtor lacks knowledge of its existence or a motive to conceal. *Warmbrand*, 2013 Bankr. LEXIS 4786, at *12.

In determining whether cause exists, courts will also consider whether the debtor and creditors stand to benefit by reopening the case and whether affected parties will be prejudiced. *Id*. "Among these considerations, the benefit to creditors is uppermost." *Arana*, 456 B.R. at 165. The court must also consider "whether reopening a case would prejudice the adversary's position." *Stein*, 394 B.R. at 16 (quoting *In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997)). However, the mere lapse of time does not constitute prejudice. *Id*. Courts may also consider additional equitable factors, such as whether relief can be afforded in an alternate forum, whether the estate has been fully administered, and the duration of time between when the case was closed and when the motion to reopen is filed. *Arana*, 456 B.R. at 172; *see In re Lowery*, 398 B.R. 512, 515-516 (Bankr. E.D.N.Y. 2008).

Finally, courts should consider that, when a debtor fails to disclose litigation claims or rights, those rights remain property of the bankruptcy estates even after a case is closed, and the chapter 7 trustee is the proper party in interest to prosecute those lawsuits. *In re Clark*, 2012 WL 1911926, at *6 (B.A.P. 9th Cir. May 25, 2012); *In re Narcisse*, 2013 Bankr. LEXIS 1336, at *6-8 (Bankr. E.D.N.Y. Mar. 29, 2013); *see also* 11 U.S.C. § 554(d) (property not abandoned or administered remains property of the estate); *Charts v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008).

*2. Whether Debtors Have Established Good Faith or Cause to Reopen*

As noted above, this Court adopted the following test in *Warmbrand* for determining whether good faith or cause has been established to reopen a case to allow a debtor to schedule a previously undisclosed lawsuit: 1) the debtor's inadvertence in failing to schedule the lawsuit; 2)

7

potential benefit to creditors; 3) indications of forum shopping or other inequitable conduct; 4)

prejudice to objecting parties; and 5) benefit to the debtor.  2013 Bankr. LEXIS 4786, at *16.

Application of this test follows.

*Inadvertent nondisclosure*

Given the extent of Mr. Amaya's alleged injuries, his consultation with personal injury

counsel, and the timing of his lawsuit and the Motion, this Court does not find that Debtors'

failure to disclose Mr. Amaya's personal injury claims was inadvertent.  Debtors should have

known of the need to disclose and should have in fact disclosed the existence of the personal

injury claims when Debtors filed their schedules and when Debtors were each examined at their

§ 341 meeting.  Mr. Amaya admits that he knew of his claim, but asserts that based on the advice

of personal injury counsel he did not believe he had a viable lawsuit and therefore thought he had

nothing to disclose.  Notwithstanding Mr. Amaya's mistaken belief and reliance on his personal

injury counsel's assessment of his case, he had a duty to disclose the existence of his claim to the

Court.  *See generally, Martelloni v. Martelloni (In re Martelloni)*, 2013 Bankr. LEXIS 4554, at

*19 (Bankr. E.D.N.Y. Oct. 31, 2013) ("a debtor's disclosure requirements extend to divulging

even worthless assets and unprofitable business transactions, as it is not for the debtor to

determine whether the asset is relevant or important to disclose"); *Beer Sheva Realty Corp. v.*

*Pongvitayapanu (In re  Pongvitayapanu)*, 487 B.R. 130, 140 (Bankr. E.D.N.Y. 2013) ("Debtors

are not permitted to omit information based on their assessment of its value or lack thereof.).

Accordingly, this Court finds that Debtors have failed to satisfy this prong of the *Warmbrand*

test.

*Benefit to creditors*

Here, there is a prospect of a benefit to Debtors' creditors.  Debtors' case was filed on

November 21, 2011, and they scheduled 12 creditors, holding a total of $443,538.58 in claims. None of these creditors had the opportunity to file a claim or receive a dividend during the course of Debtors' case. Mr. Amaya is seeking over $50,000 in damages in the Personal Injury Action.[4] The Trustee has reserved his right to and may choose to prosecute the action on behalf of Debtors' creditors in the event the Court decides to reopen this case. Debtors' case has not been closed for so long that creditors may have lost interest in filing claims. Although the potential award currently sought in the Personal Injury Action is less than the full amount owed to creditors, those amounts, if recovered, would provide a meaningful recovery to creditors.

Moreover, Debtors have not sought leave from this Court to amend their schedules to claim an exemption in any recovery, which, if sought and permitted, would otherwise reduce the sum available for distribution to creditors. *See* 11 U.S.C. § 522(d)(11)(D); N.Y. DEBT. & CRED. LAW § 282. Thus, the availability of any exemptions is not presently before the Court.

Therefore, if this case is reopened, and a newly appointed chapter 7 trustee is afforded the opportunity to investigate and prosecute the Personal Injury Action, creditors stand to receive a benefit or even a substantial benefit.

*Forum shopping*

There do not appear to be any forum shopping concerns here. That is, the Court is not presented with a situation where a debtor is seeking to make an end around a sister court's dismissal order or where reopening would serve no purpose. *See, e.g., In re Meneses*, 2010 Bankr. LEXIS 700, at *11-12 (Bankr. E.D.N.Y. Mar. 3, 2010).

---

[4] For purposes of this analysis, this Court does not need to examine the merits of the underlying claims, but may simply note the amounts being sought at this stage by the respective debtor / plaintiffs. *Warmbrand*, 2013 Bankr. LEXIS 4786, at *18, n.7 (citing *In re Smith*, 400 B.R. 370, 376 (Bankr. E.D.N.Y. 2009) (although generally not required, bankruptcy courts may examine the legal merits of an underlying complaint when considering whether to reopen a case) *aff'd* 2009 U.S. Dist. LEXIS (E.D.N.Y. Mar. 30, 2009) *aff'd* 645 F.3d 186 (2d Cir. 2011)).

*Prejudice to the Objecting Parties*

Defendants have not demonstrated significant prejudice to them if this bankruptcy case is reopened.  Defendants have not shown that the Personal Injury Action proceeded with significant discovery before Debtor sought to reopen this case, or that discovery efforts were substantially hampered by the non-disclosure of the claims in this bankruptcy case.  In addition, Defendants' motion to dismiss the Personal Injury Action has not yet been re-filed.

Further, if this case is reopened, Defendants will be required to defend the actions on the merits; however, that does not constitute legal prejudice.  *Warmbrand*, 2013 Bankr. LEXIS 4786, at \*22.

*Benefit to Debtors*

It is unknown at this juncture whether Debtors stand to benefit by reopening their case.  Mr. Amaya has not made an exemption claim in the Personal Injury Action, or recoveries therefrom, and it is not known if the lawsuit will create a surplus estate.  This Court is not called upon to conduct a mini-trial on liability and/or damages to determine whether or not to reopen the case, and Defendants have made clear that the lawsuits will be vigorously defended.  Thus, while creditors have a prospect of recovery if the cases are reopened, any potential benefit to debtors is secondary to protecting the creditors' interests in a potential recovery; conversely, if this case is not reopened, there is no prospect of any recovery to creditors.

## Conclusion

Having considered all of the facts and circumstances present in this closed bankruptcy case, the Court finds that Debtors' case should be reopened.

Based on the foregoing, it is hereby

**ORDERED**, that pursuant to 11 U.S.C. § 350(b) and FED. R. BANKR. P. 5010, the

Motion is granted; and it is further

ORDERED, that Debtors shall have **thirty (30) days** from entry of this Order to file amended schedules adding their personal injury claims thereto; and it is further

ORDERED, that the Office of the United States Trustee shall appoint a Chapter 7 Trustee in Debtors' reopened case.



Dated: December 11, 2014
     Central Islip, New York

_____
Alan S. Trust
United States Bankruptcy Judge